INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY
v. J. R. TRUE & Co.

Decided May 30, 1900.

**1.  Practice on Appeal—Briefs—Assignments and Propositions.**

Where fourteen assignments of error relating to different matters are copied together in the brief, followed by twenty-seven separate and distinct propositions, which can not relate to every one of the assignments, there is a failure to comply with rule 30, prescribing how cases shall be briefed, such as precludes consideration of the assignments.

**2.  Railway Company—Cattle Shipment—Duty of Furnishing Cars.**

When a railway company agrees to furnish stable cars for shipment at a designated time and place, it can not avoid the consequences of a breach of its duty to do so, by showing that its road is not equipped with cars of that character.

**3.  Same—Suitable Cars and Stable Cars.**

Where plaintiffs sued for damages resulting from defendant's failure to furnish them with suitable cars as agreed, a requested charge limiting the issue to a failure to furnish stable cars was properly refused, although it might be inferred from the evidence that stable cars were the kind contemplated by the parties.

**4.  Same—Charge of Court—Different Grounds of Recovery.**

Where plaintiffs' case presented two grounds of recovery, one for failure of defendant to furnish suitable cars for the shipment of the cattle at the time and place agreed on, and the other for defendant's failure to furnish cars within a reasonable time after plaintiffs tendered the cattle for shipment, a charge eliminating the second ground from the consideration of the jury was properly refused.

**5.  Evidence—Whole Conversation Admissible.**

Where part of a conversation is introduced in evidence by one party, the other may give in evidence such other parts of the conversation as explain the part admitted.

**6. Railway Company—Apparent Authority of Agent—Unknown Limitation.**

Where the contract of shipment made by plaintiffs with the general live stock agent of the railway company was within his apparent authority, it was not error to exclude testimony of instructions to such agent by the company of which plaintiffs had no knowledge.

**7. Same—Opinion as to Cause of Death of Cattle.**

Where a witness for defendant had seen the cattle before shipment, but had not seen them, and knew nothing of their treatment or condition, after shipment, nor of intervening causes which there was evidence to show might have caused their death, it was not error to exclude his opinion that the death of the cattle was caused by poor feed for some months prior to the shipment.

**8. Same—Expert Testimony.**

Even though such witness was an expert, his opinion was valueless without a knowledge of all the facts that might have contributed to the death of the cattle.

**9. Same—Estoppel as to Evidence.**

The exclusion by the court of the opinion of defendant's witness as to the cause of the death of the cattle was justified on the further ground that, upon a similar objection by the defendant, it had already excluded the opinion by plaintiffs' witnesses that the death of the cattle resulted from their detention in the shipping pens while waiting for cars.

APPEAL from Williamson. Tried below before Hon. R. E. BROOKS.

*S. R. Fisher,* for appellant.

*Galloway & Templeton,* for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellees against the appellant for damages alleged to a shipment of cattle from Encinal, Texas, to Ryan, Indian Territory, over the road of appellant and its connecting lines.

The appellees claim in their petition, (1) that prior to the time of the shipment they had made a contract with appellant to have cars at Encinal to carry their stock at certain times, and had a fixed rate of freight; and (2)) that if there were no contract for cars at the time alleged, their negotiations and transactions regarding same constituted legal notice and demand for cars at said time and place. They alleged that they drove their cattle to Encinal for shipment at the time indicated, and no cars were there to carry them, and that they were damaged while in the pens awaiting shipment, in the sum of $11,514.

The appellant answered by a general demurrer and numerous special exceptions, by general and special denials, and by setting up the terms of certain written contracts which it averred were executed by it and appellees, and constituted the agreements under which the shipments were made. It also averred that the cars it was notified to furnish were stable cars, the character of equipment not under its control.

Appellees replied by supplemental petition that the alleged written contracts were without consideration, were made under duress, and without opportunity on their part to inspect them, and were unreasonable and therefore void.

Appellant filed a supplemental answer demurring to appellees' supplemental petition.

The case was tried before a jury, and the trial resulted in a judgment in favor of appellees for $5500 damages, with interest thereon at the rate of 6 per cent per annum, amounting in the aggregate to $5914.84. From this judgment this appeal is prosecuted.

The testimony is reasonably sufficient to prove the contract alleged by appellees was entered into between them and appellant, and that the latter failed to furnish suitable cars at the time and place agreed upon for the transportation of appellees' cattle, and that in consequence of such failure appellees sustained damages in the amount assessed by the jury.

Assignments of error from numbers 1 to 14 inclusive are all copied together in appellant's brief, each one immediately succeeding the other. One complains of the court's rulings on general and special exceptions to appellant's pleadings; others to various rulings of the court in admitting testimony offered by appellees, and in excluding certain testimony offered in evidence by appellant; others to the court's failure to submit in its charge certain defenses plead; others to certain portions of the court's general charge, and others to the refusal of the court to give in charge to the jury certain special instructions asked by appellee.

Under these assignments are asserted in appellant's brief twenty-seven separate and distinct propositions. From their very nature it is apparent that all these propositions can not relate to every one of the assignments of error mentioned. A critical examination of the statements under each proposition and a comparison of the propositions with each assignment might enable us to ascertain to what assignment the several propositions relate. This we are not inclined to do. Rule 30 prescribed by the Supreme Court for briefing causes requires that each point under each one of the assignments relied on shall be stated in the shape of a proposition, unless the assignment is in itself in the shape of a proposition. As to these assignments it is apparent the rule was not observed, and as there is no reason why it should not have been, said assignments of error will not be considered.

Special charges numbers 19 and 20 asked by appellants are as follows: "19. The jury are instructed that, in the absence of contract to that effect, a railroad company rests under no obligation to furnish stable cars on demand, or any cars other than ordinary stock cars forming part of its equipment; and if from the evidence you believe that the plaintiffs placed their order for stable cars to be at Encinal at any particular date or dates, and that the defendant accepted the same and promised to make an effort to secure the cars for them about the date or dates indicated, then you are instructed that the defendant will not be liable if it made a reasonable effort to procure such cars and procured the same on or about the dates indicated.

"20. The jury are instructed that a railway company, in the absence of a contract, rests under no obligation on demand to furnish stable

cars for the shipment of cattle, or cars other than ordinary stock cars, and if you believe from the evidence that the plaintiffs herein placed an order for stable cars, and that the defendant did not contract or agree to furnish or procure the same for the use of plaintiffs on any particular day, then you are instructed to return a verdict for the defendant."

The refusal of the court to give these charges to the jury is assigned as error. The cause of action alleged by appellees is the failure of appellant to furnish suitable cars at the time and place agreed upon between the parties, and the consequent damages accruing from such failure. In the order made by appellees and accepted by appellant, stable cars eo nomine were not mentioned. It may, however, be inferred from the testimony that they were the kind of cars contemplated by the parties. If they were, it was appellant's duty to furnish them at the time and place agreed upon, and it can not avoid the consequences of a breach of such duty by showing that its road was not equipped with cars of that character. Appellant made no effort to furnish appellees any other kind of cars for the shipment of their cattle, and it seems from the evidence that they were the only kind of cars then used by appellant suitable for such purpose. If it made the contract as alleged by appellees, it is responsible for the consequences of its breach, whether stable cars were contemplated or not, for cars of no other character were tendered to appellees at the place for the shipment of their cattle. Two theories are presented by appellees' pleadings and evidence as grounds for recovery. The first is the failure of appellant to furnish them suitable cars for the shipment of their cattle at the time and place agreed upon between the parties. The second is that appellees on certain dates tendered to appellants at Encinal, Texas, their cattle for shipment thence to Ryan, Indian Territory, and that appellant failed to furnish cars for such shipment within a reasonable time after the cattle were tendered it for shipment. Both theories were presented to the jury in the court's general charge. If either was sustained by the evidence, appellees were entitled to recover. The special charges to which the fifteenth and sixteenth assignments of error relate, had they been given, would have eliminated entirely from the consideration of the jury the second theory upon which the appellees based their action. We conclude, therefore, that the court did not err in refusing to give either of said special instructions.

The ground of our refusal to consider the first fourteen assignments of error applies to appellant's seventeenth, eighteenth, nineteenth, and twentieth assignments of error, and for the same reason none of them will be considered.

The evidence, the admission of which is complained of by appellant in its twenty-first assignment of error, was part of, intimately connected with, and necessary to the understanding of, a conversation introduced in evidence by the appellant. Upon the principle that when a part of a conversation is introduced in evidence by one party, such other parts of the same conversation as explain the part admitted is admissible for the

purpose of enabling the jury to understand the meaning of the entire conversation, we do not think the assignment of error is well taken. McAuley v. Harris, 71 Texas, 631.

It was within the apparent scope of the authority of Homer Eads, as agent of appellant, to make the contract sued upon. After the extent of his power as agent had been testified to, appellant sought to prove certain instructions it had given him as to his agency, without showing that appellees had knowledge of such instructions. The testimony offered to prove the instruction was excluded upon appellees' objections, and we think properly. Instructions by the principal to an agent, or limitations upon his authority, which are not disclosed, can not be permitted to affect his apparent powers. An agent may violate his instructions and exceed the limits set to his authority, yet bind his principal to a third person, if his acts are within the scope of the authority which the principal has caused or permitted him to appear to possess. Mechem, Agency, sec. 279.

According to the testimony of Homer Eads he was, at the time the alleged contract of shipment was made, the general live stock agent of the appellant, and as such agent engaged in soliciting live stock shipments and contracting with shippers of live stock for transportation over appellant's line of railroad. In making contracts with shippers his authority to bind the appellant to furnish suitable cars at such time and place as might be agreed upon with shippers, is apparent. If he contracted for the company to furnish stable cars to make the shipments, it is immaterial whether appellant could secure a sufficient number of such cars as were necessary to meet the demand of shippers. Its inability to meet such demand was not admissible as evidence to show that Eads never made such contract. If such contract was not made, and appellant's liability should be placed upon its failure to furnish appellees suitable cars to ship the cattle within a reasonable time after it was notified of the intended shipments, it is immaterial whether appellant could control and secure for the use of its patrons a sufficient number of stable cars to meet the demand upon it, for the law would impose upon it the duty of using reasonable diligence to furnish within a reasonable time after such notification a sufficient number of suitable cars to transport over its road appellees' cattle, if such cars could be procured. Its inability to furnish stable cars would not relieve it of its duty to furnish suitable cars for the purpose required. It appears from the testimony that it used no diligence whatever to furnish any kind of cars except stable cars. We think, therefore, that the court did not err, as is complained of in appellant's twenty-fifth assignment of error, in excluding the testimony to which the assignment relates.

The witness Matthews, after testifying as to the impoverished condition of the cattle when they were in appellant's pens at Encinal, and as to the way they were handled there, gave it as his opinion that they were in no condition for shipment. He then stated it would be impossible for him to give the cause of their death after they got out of his

sight, but that in his opinion they were liable to have died from the effects of starvation suffered prior to their being shipped. He was then asked what caused the death of the cattle, and would have answered, "I could not say what caused the death of these cattle. My opinion is that it was caused from poverty of several months standing." Upon objection of appellees that the answer simply stated the opinion of the witness and did not show the facts upon which his opinion was based, and because he did not qualify himself to speak as an expert, it was excluded.

The witness McMullen also testified fully as to the condition of the cattle while at Encinal, and as to how they were handled while there in appellant's pens, and gave it as his opinion that they were not in proper condition for shipment. He was then asked if he knew what caused the death of the cattle, and would have answered, if permitted, "I think it was sheer poverty." But the same objection was interposed by appellees, and sustained by the court, to this answer that was to the excluded answer of the witness Matthews.

The action of the court in excluding said answers is assigned as error. Neither witness ever saw the cattle after they were shipped from Encinal, nor knew their condition when they arrived at their destination, or anything about the kind of care and treatment that was given them after they were received by appellees at Ryan. According to the testimony of other witnesses, causes may have intervened after they were shipped from Encinal that caused their death. Such intervening causes were not known to Matthews and McMullen, and formed no basis of the opinion of either sought to be introduced. Had they been known, their opinion might have been different. Though the witnesses may have been experts, unless they knew all of the facts that might have conduced to the death of the cattle, their opinion as to its cause would be valueless. We are of the opinion, therefore, that the answers of said witnesses were properly excluded. Besides, the court upon objections of appellant that the cause of the death of the cattle was a question of fact for the jury to determine from all the facts proven, and not from opinions of witnesses, excluded testimony offered by appellees of a witness who would have testified that in his opinion the death of the cattle was caused by their detention in the shipping pens at Encinal. Having invoked such ruling of the court in its favor, the appellant should not be heard to complain of a similar ruling upon the same character of testimony.

The jury were correctly instructed upon the measure of damages, and the court did not err in refusing to give special instructions numbers 22 and 32 asked by appellant.

Our conclusions of fact dispose of the assignments of error which complain that the verdict is contrary to the law and evidence, and is excessive.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.