RUDD v. GULF CAS. CO.

No. 4930.

Court of Civil Appeals of Texas.
El Paso.

April 1, 1953.

Rehearing Denied May 6, 1953.

810

Rex Emerson and John J. Watts, Odessa, for appellant.

David W. Stephens and W. B. Edwards, Ft. Worth, Charles L. Klapproth, Midland, Archie D. Gray, Houston, of counsel, for appellee.

McGILL, Justice.

This is a workmen's compensation case in which appellant, the claimant, sought to recover from appellee, the insurer, for total and permanent disability because of an occupational disease due to his inhaling hydrogen sulphide gas while employed by Gulf Oil Corporation—Gulf Production Division, as an oil field worker in the Sand Hills Gulf Camp in Crane County. Trial to a jury resulted in answers to special issues on which the court entered a take nothing judgment against appellant. We shall refer to appellant as plaintiff, to appellee as defendant, and to the Gulf Oil Corporation—Gulf Production Division, as "Gulf".

Appellant has presented seven points, and briefed them together. We here note that his brief does not comply with Rule 418(c), Texas Rules of Civil Procedure, in that it does not contain a "fair, condensed statement of the facts pertinent to such points" but intermingles the statement with argument so that it has been very difficult to follow the argument. However, we have carefully considered all of appellant's points. While they all relate to the admission or exclusion of evidence, the points of law involved are dissimilar, and we have therefore for the purpose of our discussion grouped the points which do involve similar questions.

The first point is that the court erred in permitting defendant's witness Simon, over timely objection, to testify as to his twenty-two years personal experience in the oil fields without having any ill effects to his person from the inhalation of hydrogen sulphide, and his second point is that the court erred in permitting this witness over objection to testify that the gas in the McElroy field was more toxic than in the Sand Hills field. L. D. Simon, defendant's field foreman, a witness for defendant, testified that he had been working in the oil fields such as the Sand Hills in Crane County for twenty-two years, and was familiar with the gas in the Sand Hills field and in the McElroy field, and that in his opinion the gas in the Sand Hills field did not contain as much sulphur per one thousand

cubic feet as in the McElroy field, which would indicate that the gas in the McElroy field was more toxic than the gas in the Sand Hills field. He also testified that during the time he had worked "out there" he had not experienced any deleterious effect by reason of having inhaled this gas. On cross-examination he was asked:

"Q. Mr. Simon, you stated you have never known anyone in the oilfield out there where Rudd was working, that ever had any bad effects from the gas?"

and after objection the following occurred:

"Q. You don't know of anybody in your 22 years in the oilfield in this vicinity, that ever got sick from breathing hydrogen sulphide gas? A. Not in the Sand Hills.

"Q. Not in the Sand Hills? A. Yes, sir.

"Q. But you do know of cases where they breathed that gas where it had ill effects? A. On the McElroy, yes."

Plaintiff had testified:

"Q. I will ask you, Mr. Rudd, if during this nine years' experience out in the oil and gas fields, you had any personal knowledge of whether or not the particular type of gas, hydrogen sulphide, that you inhaled, has caused injury to other employees and co-employees? A. I have seen them sick on it.

"Q. What do you mean by sick? What was the effect of it? A. I have seen one or two employees completely knocked out, and I have seen people deadly sick and vomit.

"Q. Would you say from your nine years' experience and from your actual observation, there are numerous oilfield workers that are affected by the hydrogen sulphide gas? A. Yes, sir."

On direct examination his attorney had propounded a hypothetical question to plaintiff's witness Dr. W. R. Snow, in which it was assumed that plaintiff had worked prior to 1949 for about nine years in the oil field *and around Crane and Crane* *County* (emphasis ours) and had breathed and inhaled and was subjected while working "out there in the oil fields" to daily inhalation of such hydrogen sulphide gas which during that time was making him sick.

■ Since Simon was an employee of Gulf this testimony did tend to rebut plaintiff's testimony above quoted, at least to the extent that this employee Simon, who had been exposed to the sulphide gas in both the Sand Hills and McElroy fields, had not been affected by the gas, and the inference raised by the hypothetical question that plaintiff had been subjected to the gas in the Sand Hills fields, which was as injurious as the gas in the McElroy field; therefore such testimony was admissible. 17 Tex.Jur. p. 372, Sec. 127. We also think that the testimony was admissible as bearing on the question of whether plaintiff's injury was due to an occupational disease. Occupational diseases, including poison by hydrogen sulphide, were made compensable by Chap. 113, Acts of Reg. Session 50th Leg., 1947. See p. 176 et seq. Vernon's Ann.Civ.St. arts. 8306, and note, 8307, 8309.

■ In Texas Employers' Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147, the court approved the definition of an occupational disease as theretofore defined in Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464:

" 'an occupational disease' is defined as one which is acquired in the usual and ordinary course of an employment and which from common experience is recognized to be incidental thereto; it is the usual and ordinary result incident to the pursuit of an occupation and must, in the nature of things, be slow and gradual in development." [146 Tex. 569, 210 S.W.2d 150.]

In Maryland Casualty Co. v. Broadway, 110 F.2d 357, at page 359, the Circuit Court of Appeals for the Fifth Circuit said:

"The present case is not one of occupational disease, because the evidence is that through a period of many years no other employee has been known to have pneumonia from inhaling the gas,

though some of it is usually encountered about the plant. Associated Indemnity Corp. v. Baker, Tex.Civ.App., 76 S.W.2d 153."

This is the very type of evidence of which appellant complains. We agree with the Circuit Court of Appeals that it was relevant and admissible, as tending to show that the injury of which appellant complained was not the result of an occupational disease. Appellant did not waive this objection by eliciting substantially the same testimony from Simon on cross-examination. Cathey v. Missouri, K. & T. Ry. Co. of Texas, 104 Tex. 39, 133 S.W. 417, 33 L.R.A.,N.S., 103; Texas Employers' Ins. Ass'n v. Bowen, Tex.Civ.App., 227 S.W. 2d 846, w.r.n.r.e. We think appellant's objection to appellee's question of A. M. Murrell, Gulf's Assistant Field Foreman, was sufficient to take this testimony out of the rule for which appellant contends; that admission of like testimony by the objecting party without objection renders harmless the testimony to which he did object. This contention is not sustained.

The third point is that the court erred in admitting over plaintiff's objection the testimony of defendant's witness Simon that he fired the plaintiff because the plaintiff was turning in time sheets on a payroll for time that he was not working for Gulf, and his seventh point is that the court erred in admitting over objection testimony as to plaintiff's being legally ejected from the property of Gulf.

█ The court did not err in admitting this testimony. It was admissible as tending to show plaintiff's animosity towards Gulf and his bias as a witness—in other words, it was relevant as to the question of credibility. 45 Tex.Jur. p. 265, Sec. 336; Payne v. Bannon, Tex.Civ.App., 238 S.W. 701 no writ history, where on cross-examination plaintiff admitted that he was requested to quit because he was carrying "dead men" on his payroll and got some of the money. The court held that such evidence was clearly admissible to show the bias of plaintiff as affecting his credibility. See also Boone v. Moore, 246 S.W. 685 (this court) no writ history.

Point four is that the court erred in overruling plaintiff's timely objection to defendant's counsel making a statement in the presence of the jury that he, counsel for appellee, did not believe that appellant brought this suit in good faith; and the fifth point is that the court erred in failing to admonish the jury to disregard the statements made by defendant's counsel as to his theories with reference to plaintiff's cause of action. These points are more serious, but we think present no reversible error. On cross-examination of plaintiff by one of defendant's counsel the following occurred:

"Q. Now, your wife filed a suit about this gas, too, didn't she? A. Yes, sir.

"Mr. Pope: I am going to object to the last question and answer and ask that they be stricken from the record; it has no connection whatever with this lawsuit and I don't know what the purpose of putting it in is, unless it is for bias and prejudice.

"Mr. Stephens: Your honor, we think that Mr. Rudd hasn't got anything the matter with him that came from his work out there in the gas in the Sand Hills, and we think, in all good conscience, that his suit here is without proper basis, and I think it is relevant to the issue of the good faith claimant in this case, as to whether such a case —of course not under the Workmen's Compensation law—but whether such a suit was filed by plaintiff's wife, who sits in the courtroom, alleging she was injured by the gas. That is it—relevancy.

"Mr. Pope: I am going to make a further objection to counsel testifying what they, in all good conscience think about this case, and ask the Court to instruct the jury to disregard that remark. As to our previous objection, another previous lawsuit has no connection whatever with this particular case unless he can connect it up, and I don't believe that he can.

"Mr. Klapproth: That is the very meat of this thing, that he didn't file

his claim with the Industrial Accident Board within six months, and as Mr. Stephens says, it is not a bona fide claim.

"Mr. Pope: That is a question of fact, as to whether he filed his claim in due time or whether there was good cause for his not filing it in time. I don't want to misquote law to counsel but I believe the occupational disease law requires it to be filed within six months after the disability asserts itself, not from the date of the exposure. I think this line of questioning is prejudicial.

"The Court: The objection is overruled.

"Mr. Pope: Note our exception, and we want to reserve a bill on it, your honor.

"The Court: Yes, sir."

It is appellant's contention that the statement by defendant's counsel amounted to unsworn testimony, and that plaintiff was deprived of his right to cross-examine counsel as a witness. We construe the statement in a different light. The question propounded was proper; not only plaintiff but his wife were witnesses in the case. Their testimony was vital on the question of whether appellant had contracted an occupational disease or shown good cause for not having filed his claim with the Industrial Accident Board within the statutory period. The information elicited was admissible to show animosity, bias or prejudice. Missouri, K. & T. Ry. Co. of Texas v. Burk, Tex.Civ.App., 146 S.W. 600, no writ history. Counsel's statement was nothing more than an expression of opinion which he could deduce from the evidence. He unquestionably could have expressed such opinion in his argument to the jury, 41 Tex.Jur. p. 772, Sec. 56, and we can see no valid reason why he could not express it in argument as to the admissibility of evidence.

Point six is that the trial court erred in admitting testimony of defendant's witness Sadler as to what records of his employer disclosed, over the timely objection of plaintiff. Mr. R. E. Sadler,

a witness for defendant, over plaintiff's objection that the records were the best evidence, testified that he maintained the books and records of Gulf with regard to employees in the Sand Hills field, and that from his examination of the records plaintiff's off-duty days from 1941 to 1949 were 75 to 80 days, and from January to July 1949 from 3 to 4 days. We fail to see the materiality of this testimony unless to impeach plaintiff's testimony to effect that he had worked for Gulf regularly forty hours a week for a period of nine years. The evidence did not form the foundation for plaintiff's cause of action and therefore does not fall within the inhibition of the best evidence rule. Heidenheimer v. Beer, Tex.Civ.App., 155 S.W. 352, loc. cit. 355(1) wr. ref.; Cochran v. Wm. M. Rice Institute, etc., Tex.Civ.App., 123 S.W.2d 359, loc. cit. 362, wr. ref.; Hranicky v. Trojanowsky, Tex.Civ.App., 153 S.W.2d 649, loc. cit. 654(7) w. r. w. m.

All of appellant's points are overruled and the judgment of the trial court is affirmed.

Affirmed.